IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KELVIN C. JOHNSON, | } | |
| TDCJ-CID No. 1244317, | } | |
| Petitioner, | } | |
| v. | } | CIVIL ACTION H-07-3518 |
| NATHANIEL QUARTERMAN., | } | |
| Respondent. | } | |

OPINION ON DISMISSAL

Petitioner Kelvin C. Johnson, an inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ('TDCJ-CID'), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his felony conviction for theft. (Docket Entries No.1, No.2). Respondent has filed a motion for summary judgment. (Docket Entry No.13). Petitioner has filed a response to the motion. (Docket Entry No.21). After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

I. BACKGROUND AND PROCEDURAL HISTORY

On June 17, 2004, petitioner was convicted of aggregated theft of more than $20,000.00 and less than $100,000.00 in the 230th Judicial District Court of Harris County, Texas in cause number 964792. *Johnson v. State*, No.14-04-00718-CR, Clerk's Record, page 177. He was sentenced to twenty years' confinement in TDCJ-CID and assessed a fine of $10,000. *Id.* The Fourteenth Court of Appeals for the State of Texas summarized the facts presented to the jury, as follows, in pertinent part:

> Between January 2003 and October 2003, appellant met with seven different attorneys to discuss a potential personal injury claim. Using several aliases, appellant claimed that he had been injured in an offshore accident while working

1

> for Diamond Drilling Company ('Diamond'). Specifically, appellant told the attorneys that he and his co-worker, John Dubois, had been unloading pipes when a cable on the crane broke, causing the heavy pipes to fall on top of them.
>
> Appellant, who frequently limped and carried a cane when he met with the attorneys, claimed that he had been knocked unconscious and that he had injured his knee, leg, and back. Appellant said that he had undergone knee surgery at University of South Alabama Hospital in Mobile and showed some attorneys his scar. Appellant claimed that Dubois had been transported to Louisiana, where he remained in a coma. Appellant then informed the complainants that orthopedic surgeon Dr. Alan Criswell was going to operate on appellant's back at Hermann Hospital in Houston. Appellant also told most of the complainants that Dubois' wife Mary wished to be represented by the same attorney as appellant.
>
> Additionally, appellant claimed that Diamond had offered to settle and that until recently, the company had been paying his family's living expenses. However, when he met with the complainants, appellant lamented that he could no longer pay his rent and that the landlord was threatening to evict him, his wife, and their four small children.
>
> Believing appellant's case to be legitimate, the attorneys agreed to represent appellant pursuant to a contingency fee agreement. After appellant provided one of several Beaumont addresses and what appeared to be valid proof of identification, the attorneys advanced either checks or cash to cover appellant's various expenses. Appellant disappeared immediately after receiving the money. Shortly thereafter, the attorneys discovered that appellant had never worked for Diamond, that he had never been a patient at either the University of South Alabama Hospital or Hermann Hospital, and that the home address he had provided did not exist.
>
> Police eventually arrested appellant after organizing a 'sting' operation with complainants Edwards and Johnson. Appellant had discussed his case with attorney Edwards and believed that Edwards was going to advance him $3,000 in cash. When appellant met with Johnson, a private investigator hired by Edwards, Johnson handed appellant an envelope that contained a check made out to Edwards. Police arrested appellant as soon as he took possession of the check.

*Johnson v. State,* 187 S.W.3d 591, 593-94 (Tex.App.--Houston [14th Dist.] 2006, pet. ref'd)

(footnotes omitted).

On direct appeal, petitioner argued that the evidence was legally and factually insufficient to support his conviction and the state district court erred in allowing him to

2

represent himself. *Id*. at 593. The intermediate state appellate court affirmed the state district court's judgment on January 17, 2006. *Id.* On May 24, 2006, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Johnson v. Texas*, P.D.R. 0338-06. Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court.

On May 25, 2007, petitioner sought state habeas relief on the following grounds:

1. Petitioner was denied his Sixth Amendment right to a conflict-free representation;

2. The state district court committed reversible error by allowing petitioner to proceed *pro se* at trial without admonishing him that he was entitled to appointed counsel because of his indigent status;

3. The twenty-year sentence is unlawful because it is improperly enhanced by another theft conviction;

4. He was denied the disclosure of the affidavits filed by complainants.

*Ex parte Johnson*, Application No.50,347-04, pages 2-27. The state district court, sitting as a habeas court entered findings and recommended that habeas relief be denied. *Id.* at 90-91. On September 12, 2007, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on findings of the trial court without a hearing. *Id.* at cover.

Petitioner filed the pending federal habeas petition on October 16, 2007. (Docket Entry No.1). He seeks relief on the following grounds:

1. Petitioner's Sixth Amendment right to a conflict-free representation was violated;

2. The state district court committed reversible error by allowing petitioner to represent himself at trial without admonishing petitioner that he had the right to appointed counsel because he was indigent;

3. Petitioner's twenty year sentence is illegal, excessive, and not authorized by law;

3

      4. Petitioner was denied access to the courts regarding information that may have been favorable to his defense; and,

      5. The evidence was legally and factually insufficient to support his conviction.

(Docket Entry No.1).

Respondent moves for summary judgment on grounds that some of petitioner's claims are procedurally barred, petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and his claims fail on the merits. (Docket Entry No.13).

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

## III. ANALYSIS

### A. Procedural Bar

Respondent contends that petitioner's claim that his twenty-year sentence was excessive and illegal and his claim that the state district court deprived him of favorable evidence are procedurally barred and not subject to federal habeas review. (Docket Entry No.13). The state habeas court found that such claims were "record claims" should have been raised on direct appeal and not on habeas review. *Ex parte Johnson*, Application No.50,347-04, page 90. The Texas Court of Criminal Appeals adopted the state habeas court's findings. *Id*. at cover.

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-04, (1991). It is well settled under Texas jurisprudence that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991). The federal courts recognize Texas's procedural default rule concerning the requirements that record claims must be raised on direct appeal. *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005). Because petitioner did not raise such claims on direct appeal and the last court to consider such claims expressly and unambiguously based its denial of relief on a state procedural default, his claims are barred absent a showing of cause and prejudice or a fundamental miscarriage of justice.

Petitioner alleges that he is actually innocent of the sentence enhancement from a third degree felony to a second degree felony because the enhancement was not authorized by law; therefore, he claims he fits within the fundamental miscarriage of justice exception. (Docket Entry No.21). "The 'actually innocent' standard is the same as the 'fundamental

5

miscarriage of justice' standard." *United States v. Sorrells*, 145 F.3d 744, 749 n. 3 (5th Cir.1998). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *United States v. Torres*, 163 F.3d 909, 912 (5th Cir.1999). To establish actual innocence, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 1995)). "Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Id.* Petitioner does not present any new or reliable evidence to establish factual innocence and makes no showing of cause and prejudice for his failure to raise these claims on direct appeal. Accordingly, the Court will dismiss these claims as procedurally barred.

## B. Remaining Claims

Respondent also moves for summary judgment on grounds that petitioner has failed to meet his burden of proof under the AEDPA and that his claims fail on the merits. (Docket Entry No.13).

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

6

Under the AEDPA, the petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a petition for discretionary review and a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order on the trial court's findings without a hearing. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in the petition for discretionary review and state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v.*

7

*Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and

convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### 1. Sufficiency of the Evidence to Support Conviction

Petitioner contends that the evidence is factually and legally insufficient to support his aggregated theft conviction. (Docket Entries No.1, No.2, No.21). Petitioner claims that based on the indictment and the jury charge, the State was required to prove that the property appropriated was money and one check over $20,000.00 from any one complainant pursuant to one scheme or continuing course of conduct. (Docket Entries No.1, No.2). Petitioner contends that the State did not meet its burden when it presented evidence in the disjunctive. (*Id.*).

A federal court tests the sufficiency of evidence in a federal habeas review of a state court conviction under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). Evidence is sufficient to support a conviction if when viewed in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that the accused committed the essential elements of the crime. *Id.* at 319. The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except

guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).

Under state law, theft is defined as the appropriation of property, including money, with the intent to deprive the owner of the property and without the owner's effective consent. TEX. PEN. CODE ANN. § 31.03(a), (b)(1) (Vernon Supp. 2008). Consent is not effective if induced by deception. TEX. PEN. CODE ANN. § 31.03(3)(A) (Vernon Supp. 2008). Deception includes the creation of a false impression or the promise of performance by words or conduct that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed. *Id.* § 31.03(1)(A), (E). Moreover, when a defendant commits multiple thefts over a period of time, whether from the same or several sources, the thefts may be considered one crime if they were committed pursuant to one scheme or continuing course of conduct and the amounts aggregated in determining the grade of the offense. TEX. PEN. CODE ANN. § 31.09 (Vernon 2003).

The Fourteenth Court of Appeals for the State of Texas found petitioner's conduct constituted one scheme or continuing course of conduct supporting petitioner's theft conviction, on the following evidence:

> Over a ten-month period, appellant told all seven attorneys that he used to work for Diamond [Drilling Company] and that he and a coworker had been injured while unloading pipes on an oil rig, usually called the Ocean Nugget. Appellant's comatose coworker usually was named John Dubois, and appellant frequently claimed that Dubois's wife Mary also needed representation. In most instances, appellant claimed that Diamond had offered a settlement. Appellant also consistently stated that he had injured his knee, leg, and back, and that he needed further surgery; appellant typically claimed that Dr. Criswell was going to perform the operation. Furthermore, appellant repeatedly lamented that he needed money to care for his wife, who usually was named Vanessa, and their four children. Appellant always requested large sums of money from the complainants and disappeared after receiving the money. Appellant used the same alias with several complainants, and he routinely mentioned certain other characters in his

> various accounts, including Michael Henison/Henderson, Mr. Bradley, Dr. Blackwell, and Chris Hamilton.

*Johnson*, 187 S.W.3d at 603. The Fourteenth Court of Appeals also found that "the State was not required to prove that appellant stole 'money and one check,' whose combined total is at least $20,000, from only one complainant." *Id.* at 604. Citing *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990), the Fourteenth Court of Appeals noted that in a theft case, the allegedly stolen property must be generally described in the indictment and conforming evidence must be adduced but the State need not show that the accused stole every piece of property described in the indictment to secure a valid conviction.[1] *Id.* The intermediate appellate court also noted that the State may properly plead alternative "manner and means" in the conjunctive when proof of any one "manner or means" will support a guilty verdict. *Id.* The intermediate appellate court further noted that the state district court may charge the jury in the disjunctive when the indictment uses the conjunctive to allege different methods of committing the offense.[2] *Id.* citing *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). The Fourteenth Court of Appeals rejected petitioner's insufficiency claim and found the following, in pertinent part:

---

[1] The indictment charges, in pertinent part, that on various dates between May 21, 2003 and October 13, 2003, defendant did unlawfully acquire and otherwise control money and one check owned by Bill Edwards and/or Charlie Johnson, and/or Larry Boyd, and/or D'Juana Parks, and/or Gerry Dunne, and/or Robert Zeither, and/or J.P. Jay Hughes, and/or James W. Nobles, Jr., and/or R. Gary Stephens, pursuant to one scheme and continuing course of conduct, and in an aggregate amount and the value of more than twenty thousand dollars but less than one hundred thousand dollars, with intent to deprive the complainants of the property permanently or for an extended period of time that the value of enjoyment of the property was lost to complainants, and without their effective consent, by deception, namely, by creating and/or confirming by words and/or conduct a false impression of law or fact that was likely to affect the complainants' judgment in the transaction and that defendant had previously created or confirmed by words or conduct, which defendant did not believe to be true and without the effective consent of the owner, namely with consent given solely to detect the commission of an offense. *Ex parte Johnson*, Application No.50,347-04, page 119.

[2] The jury charge instructed jurors to consider whether petitioner unlawfully acquired or controlled money and one check owned by "Bill Edwards or Charlie Johnson, or Larry Boyd, or D'Juana Parks, or Gerry Dunne, or Robert Zeither, or J.P. Jay Hughes, or James W. Nobles, Jr., or R. Gary Stephens." *Johnson v. State*, No.14-04-00718, Clerk's Record, page 164.

> [T]he phrasing of the indictment and the jury instructions did not require the State to prove that appellant stole "money and one check," whose combined total was at least $20,000, from only one complainant. We also find that a rational jury could have found that appellant stole "a bundle" of at least $20,000 from the complainants collectively. The complainants' testimony revealed that appellant took $4,000 from Nobles, $5,000 from Hughes, $5,000 from Parks, $6,000 from Stephens, $6,000 from Dunne, $5,500 from Boyd, and $3,000 from Edwards; Detective Garrett also testified that the total amount stolen was $34,500. There is no evidence that appellant did not take the money; at trial, appellant simply argued that the case should be tried in civil, not criminal court, and he also tried to diminish the witnesses' credibility by proving that they had not signed affidavits.

*Id.* at 605. The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on the insufficiency issue.

The state appellate courts' legal sufficiency analysis satisfies the *Jackson v. Virginia* standard and is supported by the record.[3] *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (applying the *Jackson v. Virginia* standard in reviewing the sufficiency of the evidence to support a conviction). Accordingly, petitioner has failed to carry his heavy burden to show that the state courts' determination of this issue was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or that such decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

To the extent that petitioner challenges the factual sufficiency of the evidence, he is not entitled to federal habeas relief. Factual insufficiency is a creation of Texas law whereby the reviewing court scrutinizes the fact finder's weighing of the evidence. *Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002); *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

---

[3] For a detailed summary of the testimony given at trial, *see Johnson v. State*, 187 S.W.3d 591, 596 -601 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd).

Because a factual sufficiency claim is based entirely on Texas law, it will not support a claim for relief under federal habeas law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

### 2. Self-Representation

Petitioner contends that the state district court erred in granting his motion to proceed *pro se* at trial without fully admonishing petitioner that because of his indigent status he had the right to appointed counsel. (Docket Entries No.1, No.2). Respondent maintains that petitioner knowingly and voluntarily waived his right to counsel and chose to represent him *pro se* at trial. (Docket Entry No.13).

An "accused has a Sixth Amendment right to conduct his own defense provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984); *see also Faretta v. California*, 422 U.S. 806 (1975). The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). While courts are required to provide *Faretta* warnings, there is no "sacrosanct litany" of inquiries which are mandated; instead, courts must use their discretion in determining the precise nature of the warning depending on the circumstances of the individual case. *U.S. v. Davis*, 269 F.3d 514, 518-519 (5th Cir. 2001).

The record reflects that on October 16, 2003, the state district court appointed Deborah Keyser as counsel upon petitioner's motion for the appointment of counsel because of his financial inability to retain counsel. *Johnson v. State*, No.14-04-00718-CR, Clerk's Record, pages 6, 196. Apparently Keyer withdrew from representation and the state district court

13

appointed Rayford Carter as counsel on November 20, 2003. *Id.*, page 196. On March 10, 2004, the state district court granted Attorney Carter's motion to withdraw as counsel on his allegation of a personality conflict with petitioner. *Id.*, page 26. On April 2, 2004, petitioner appeared in court without counsel and the state district court admonished him that he must have an attorney by the next court setting. *Id.*, page 197. On April 8, 2004, petitioner appeared in court with retained counsel, Cedrick Muhammad.[4] *Id.* On May 6, 2004, petitioner filed a "Notice to Proceed Pro Se," in which he informed the state district court that he would "be proceeding pro se in this cause." *Id.*, page 102. Petitioner indicated in such motion that he had an absolute right to self-representation and that a written waiver was not required. *Id.* He also indicated that there was "no script of questions that a judge needs to ask to determine that a defendant knows all the pitfalls of representing hisself [sic]." *Id.*

In considering petitioner's claim that his waiver of his right to counsel was not knowing and intelligent because the trial court failed to conduct a proper *Faretta* hearing, the Fourteenth Court of Appeals summarized the testimony at the hearing on petitioner's motion, as follows, in pertinent part:

> About a month before trial, appellant complained that he could not communicate with his attorney, Cedrick Muhammed. Asserting that he wished to represent himself, appellant acknowledged that he would not "get any special breaks." In response to the court's initial questions about his education, appellant stated that he was forty-one years old and had completed school through the ninth grade, although he was "well-equipped like a person who graduated." Appellant answered affirmatively when the court asked whether appellant understood the charges against him and the possible punishment ranges; when the court asked him to

---

[4] Plaintiff attached to his state habeas application a letter written by Attorney Cedrick L. Muhammad. In his letter to the State Bar of Texas in defense of the grievance that petitioner filed against him, Muhammad stated that he agreed to represent petitioner on March 7, 2004, but was unaware that petitioner's case was on the trial docket. *Ex parte Johnson*, Application No.50,347-04, page 29. On March 8, 2004, Muhammad accompanied petitioner to court, where he learned that Attorney Rayford Carter was withdrawing from the case over the judge's objection. *Id.* Muhammad stated that the judge allowed Carter to withdraw because Muhammad agreed to substitute in as counsel. *Id.* Muhammad further stated that the judge told him that he was the third or fourth lawyer that petitioner had hired on the case and she would not let him withdraw at anytime. *Id.*

elaborate, he stated: "There are three cases, each are [sic] third degree felonies are [sic] enhanced by one prior true felony which makes the punishment range two years to twenty years in the punishment and a ten thousand dollar fine." When appellant expressed uncertainty about the punishment range regarding the last offense, the district attorney retrieved the file, which included the most recent cause number for the third case and a copy of the indictment. Later, appellant also stated that he knew he would be required to serve the punishment assessed by the jury if his conviction were upheld on appeal.

When the court asked about the extent of appellant's "knowledge of specific rules of criminal cases and what things you will have to do to represent yourself," appellant responded: "I have to know when to object what questions to be asked and at my trial what motions to be filed. To get rulings on my motion [sic]. Ask questions to the witness that's relevant to this criminal case." Appellant also stated that he was familiar with the Rules of Evidence and the Rules of Criminal Procedure and acknowledged that he needed to comply with them at trial. When the court asked how appellant had become familiar with those rules, appellant replied that he had begun to study them about four years earlier. Appellant further explained that he read "the Texas law books" and "a lot of federal government books," particularly "the Court of Criminal Procedure book." Appellant also revealed that he had represented himself in a post-conviction writ and in a theft charge that was dismissed before trial.

When asked about the nature of voir dire, appellant explained that there would be about sixty people in the jury pool, that he and the district attorney each would have ten strikes, and that "me and him negotiate on what we see whoever we see that would benefit me or whoever benefits him." In response, the court informed appellant that while each side would have ten strikes, no negotiation would occur. Appellant also admitted that he did not know the difference between a peremptory challenge and a challenge for cause, and the court did not offer an explanation.

Aware that his trial was less than a month away, appellant had requested additional time to conduct legal research. The court granted this motion but advised that "even with all the time in the law library that you want I don't think you'll be ready to try a case in felony court." Appellant responded that he would indeed be ready and agreed with the court's statement that his conduct at trial "would be of critical importance to the outcome of [his] case." Appellant also stated that he understood that conducting his defense required more than simply telling the jury his side of the story. Appellant also appeared to comprehend the court's warning that the jury would not know about certain details of the case unless appellant abided by the evidentiary rules.

Toward the end of the hearing, appellant reiterated that although he had not consulted with Muhammed about his case or arranged for any witnesses to appear on his behalf, he did not want Muhammed to represent him. Appellant stated that

> he was aware that he would be representing himself throughout the whole trial and acknowledged that the district attorney was a licensed, experienced attorney. Appellant also stated that he had never been found insane or incompetent and had never been treated for a mental illness; he also responded affirmatively when the court asked whether he had the "mental capacity to freely and voluntarily waive [his] right to representation by Mr. Muhammed and represent [himself] at trial." Finally, at the end of the hearing, appellant responded affirmatively when the court asked: "Do you freely and voluntarily waive your right to have Mr. Mohammed [sic] represent you in trial of these cases and telling [sic] this court that you still wish to represent yourself in trial of these cases?" Although the trial court appointed Muhammed as standby counsel, appellant did not request his assistance at trial.

*Johnson*, 187 S.W.3d at 594-595; *see also Johnson v. State*, No.14-04-00718-CR, Reporter's Record, Pretrial Motion, pages 5-19. Based on these facts and the applicable law, the state intermediary appellate court found that petitioner knowingly and intelligently waived his right to counsel. *Johnson*, 187 S.W.3d at 606-07. The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on this issue.

The record supports the findings of the state appellate courts. Petitioner does not allege, much less prove, that he did not understand the state district judge's warnings and the consequences of self-representation or that he did not knowingly and voluntarily waive his right to counsel and assert his right to self-representation. Moreover, the record reflects that by his previous motion, petitioner was aware that as an indigent, he was entitled to the appointment of counsel. The record also shows that petitioner did not seek such appointment at the hearing wherein he waived his right to counsel and asserted his right to self-representation. Therefore, the state district judge did not err by failing to admonish petitioner of his right to appointed counsel. Because petitioner's waiver of counsel and assertion of self-representation did not violate the Constitution, he is not entitled to federal habeas corpus relief.

### 3. Conflict-Free Representation by Stand-By Counsel

Petitioner next contends that he was denied the effective assistance of counsel at trial because of a conflict of interest with his retained counsel. (Docket Entries No.1, No.2). Petitioner claims that retained counsel, Attorney Muhammad, misused the retainer fee that petitioner had paid him to fund the defense of petitioner's accomplice without petitioner's authorization. (Docket Entry No.2). Petitioner claims that his retained counsel refused collect calls from him and direct calls from his family regarding the status of the case. (*Id.*). Petitioner claims that he informed the state district court of the potential conflict and that the court "forced" petitioner to proceed *pro se* and appointed retained counsel as standby counsel. (*Id.*). Petitioner contends that as standby counsel, Muhammad violated State Bar of Texas Disciplinary Rules by his representation of petitioner's accomplice, his misappropriation of the retainer fee, and his failure to question and review the affidavits filed by complainants. (*Id.*).

The state habeas court found that petitioner "knowingly and voluntarily waived his right to counsel, chose to represent himself *pro se* at trial, and did not confer with court-appointed standby counsel; therefore, he may not now complain that standby counsel was constitutionally ineffective." *Ex parte Johnson*, Application No.50,347-04, page 90. The Texas Court of Criminal Appeals denied petitioner's state habeas application on the state habeas court's finding. *Id.*, at cover.

The state habeas courts' finding is consistent with federal law. There is no federal constitutional right to hybrid representation where a defendant shares the duties of conducting his defense with a lawyer. *McKaskle*, 465 U.S. at 183. Although the court may appoint standby counsel to assist a *pro se* defendant, there is no constitutional right to the effective assistance of such counsel. *See, e.g. Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006); *United States v.*

17

*Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997). The record here shows that petitioner executed a voluntary and knowing waiver of his right to counsel with a full understanding of the consequences of the waiver. Accordingly, any lack of assistance by standby counsel cannot constitute a Sixth Amendment violation. *See generally United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (noting in dicta that if defendant "had no right to standby counsel, it seems unlikely that standby counsel's failure to assist could be a violation of his Sixth Amendment rights").

To the extent that petitioner complains that Muhammad rendered ineffective assistance of counsel before he was appointed standby counsel, petitioner fails to show that Attorney Muhammad had an actual conflict of interest that affected the adequacy of his representation. When a claim of ineffective assistance of counsel is based on an alleged conflict of interest, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance, thereby rendering the verdict unreliable. *Cuyler v. Sullivan*, 446 U.S. 335, 448 (1980); *see also Mickens v. Taylor*, 535 U.S. 162, 172 and n. 5 (2002). If a petitioner shows that his attorney's conflict of interest actually affected the adequacy of his representation, he need not demonstrate prejudice before he may obtain relief. *Cuyler*, 446 U.S. at 349-50. An actual conflict of interest is a conflict that affects counsel's performance as opposed to a mere theoretical division of loyalties. *Mickens*, 532 U.S. at 171.

The record does not indicate that petitioner objected to an actual conflict of interest at the hearing on his motion to proceed *pro se*[5] or during the actual trial. Moreover,

---

[5] Petitioner does not allege a conflict of interest in his "Notice to Proceed Pro Se," filed on May 6, 2004. *Johnson v. State*, No.14-04-00718-CR, Clerk's Record, pages 102-03. Petitioner complained at the hearing on May 20, 2004, that he believed that his retained counsel could not adequately help him in trial. *Id.*, Reporter's Record, Pretrial Proceedings, page 7. He complained that his trial counsel had not communicated with him as a "lawyer/client." *Id.*, page 16. In response to the state district judge's question as to whether petitioner wanted to visit with his counsel

18

petitioner presents no evidence to show the existence of an actual conflict, which adversely affected his lawyer's performance while acting as retained or standby counsel and no evidence that Muhammad's conduct at any time rendered the verdict unreliable. Accordingly, petitioner's complaint that he was denied his right to a conflict-free representation is without legal merit and subject to dismissal.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The

---

regarding counsel's representation, petitioner said, "Not my desire for him to represent me, just money stolen." *Id.* Petitioner told the judge that his counsel had attempted to withdraw because petitioner could not pay counsel." *Id.* page 17.

Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding and appellate courts, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.13) is GRANTED.

2. Petitioner's petition for federal habeas relief is DENIED.

3. A certificate of appealability is DENIED.

4. This habeas action is DISMISSED with prejudice.

5. Petitioner's motion for leave to file an amended petition (Docket Entry No.22) is DENIED.

6. All other pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 28th day of January, 2009.

                                MELINDA HARMON
                       UNITED STATES DISTRICT JUDGE